THE PEOPLE'S BUILDING & LOAN ASSOCIATION OF SAGINAW COUNTY v. JOHN W. BILLING AND MARY A. BILLING.

*Constitutional law—Class legislation—Building and loan associations—Ultra vires—Premium—Foreclosure of mortgage—Forfeiture of stock—Husband and wife—Tenancy in entirety.*

1. Act No. 50, Laws of 1887,[1] which provides for the incorporation and regulation of building and loan associations, is not unconstitutional as class legislation.[2]

2. Certain provisions of the original act are construed as follows:
   *a*—The fact that, on making a loan, the joint obligation of the member to whom the loan is made, and another, who is not a member, is taken, or that the loan is secured by a mortgage executed by a third person, will not open the defense of *ultra vires*, under section 8, which provides that "no loan shall be made by said corporation except to its own members, nor in any sum in excess of the amount of stock held by such members borrowing."
   *b*—The receipt or retention by the association of a premium out of the loan is not in excess of the powers of the corpora-

---

[1] This act, as amended by Act No. 247, Laws of 1889, stands as chapter 119a, 3 How. Stat., and was further amended by Act No. 269, Laws of 1895.

[2] See *Reeve v. Association*, 18 L. R. A. 129, and note on "Usury in loans by building associations."

tion under section 8, which provides that "the board of directors shall hold such stated meetings as may be provided by the by-laws, at which the money in the treasury, if more than the amount fixed by the by-laws as the full value of a share, shall be offered for loan in open meeting, and the stockholder who shall bid the highest premium for the preference or priority of loan shall be entitled to receive a loan of not more than the amount fixed by the by-laws as the full value of a share of stock (less the premium bid) for each share of stock held by said stockholder."

c—Under section 10, which provides that in the event of the repayment of a loan by a borrower before the expiration of the eighth year after the organization of the association, or the date of issue of the series of stock in such association on which the loan may have been made, there shall be refunded to such borrower one-eighth of the premium paid for every year of the said eight years then unexpired, a borrower has no right to a deduction on account of premium paid, except in case of a voluntary payment of his debt before maturity.

d—Section 9, which provides that, in case of non-payment of installments or interest and fines by borrowing stockholders for the space of six months, payments of principal and interest and fines, without deducting the premium paid or the interest thereon, may be enforced by proceedings against their securities, according to law, upon the order of the board of directors, was not beyond the power of the Legislature to enact.

3. The contention that the premium should have been computed upon the amount of money received, and not on the face of the loan, is untenable, where the borrower understands in advance that the latter mode of computation is to be followed, and accepts the money and executes the securities after the premium has been so computed, and the amount thereof deducted from the face of the loan.

4. A mortgage executed by husband and wife upon land owned by them as tenants in the entirety, to secure a loan made to the husband alone, is valid.[1]

5. A wife joined with her husband in the execution of a bond given to secure a loan made to him alone. The loan was further secured by a mortgage upon land owned by both as tenants in the entirety. A bill was filed to foreclose the mortgage, in which the bond was set forth, but a personal decree was asked for as against the husband only. And it is held that the wife was not personally liable on the bond, and that it was competent for the court to enter a personal decree

---

[1] See note at end of opinion.

against the husband, without reforming the bond or the pleadings.[1]

6. The bond given by a member of a building and loan association, on making a loan of the association, provided that, in case of default in its conditions, the shares of stock held by the member, which were transferred as collateral to the bond, might be declared forfeited to the association as for non-payment of dues, and should thereupon revert to the association as forfeited stock, and the withdrawal value thereof, at the option of the association, might be applied to the satisfaction of the indebtedness secured by the bond. And it is held that no formal foreclosure is necessary for the purpose of making such application; that it is contemplated that the payments on the stock, together with its earnings, shall remain in the hands of the association, and be applied, without foreclosure, to the reduction of the claim,—at least, at the option of the association.

Appeal from Saginaw. (McKnight, J.) Argued January 10, 1895. Decided February 26, 1895.

Bill to foreclose a mortgage. Both parties appeal. Decree entered in this Court for complainant. The facts are stated in the opinion.

*O. E. M'Cutcheon* (*W. J. Lamson,* of counsel), for complainant.

*William L. Webber,* for defendants.

MONTGOMERY, J. This is a proceeding to foreclose a mortgage given by defendants to complainant to secure a loan of money made to defendant John W. Billing, who was at the time of making the loan a member of the complainant association.[2] The property mortgaged was real estate owned by defendants as tenants in the entirety. The application for the loan was made in the usual way.

---

[1] For cases bearing upon the question of the liability of married women upon general contracts, see *Mosher v. Kittle,* 101 Mich. 345, and note.

[2] The mortgage was given December 5, 1888.

The face of the loan was $1,500. The premium paid was 37 per cent., so that defendant John W. Billing received but $1,049.07. The loan was secured by a joint bond executed by the two defendants, by the mortgage upon the property in question, and by a deposit of stock held by John W. Billing, of the face value of $1,500, but upon which there had been paid but $165.75. The court decreed foreclosure, and both parties appeal,—the complainant on the ground that the decree was too small, and the defendants on various grounds, which will be considered in order.

1. It is contended that the loan was made to defendant John W. Billing and another, not a member of the association, and that for this reason it is *ultra vires*. Section 8 of Act No. 50, Laws of 1887, under which the complainant was organized, provides that—

"No loan shall be made by said corporation except to its own members, nor in any sum in excess of the amount of stock held by such members borrowing."

The bill alleges that defendant John W. Billing bid for the loan, and that the loan was made in accordance with said bid. It is true the bill further sets out the giving of the joint bond and mortgage, and avers that thereby the defendants, John W. Billing and Mary A. Billing, became jointly indebted to the complainant. But, taken as a whole, these averments show a loan to John W. Billing, and the giving of an undertaking, joint in form, by John W. Billing and Mary A. Billing, as security for the loan. Whether this undertaking created a personal liability on her part or not, the averment is not inconsistent with the proofs, which showed a loan made to John W. Billing; and, when the loan is so made, the fact that the joint obligation of the member and another is taken, or that the loan is secured by a mortgage executed by a third person, does not open the defense of *ultra vires*. End. Bldg.

Ass'ns, § 382; *Massey v. Association*, 22 Kan. 624; *Association v. Mixell*, 84 Penn. St. 313; *Kadish v. Association*, 47 Ill. App. 608.

2. It is next urged that the transaction was a discount, and not a loan, and that, as the corporation is given no banking powers, discounting paper is beyond the scope of its business and authority, and that the contract is for this reason *ultra vires*. To sustain this contention, counsel cites the case of *Anderson v. Association* (Tex. App.), 16 S. W. Rep. 298. But the same court, in *Sweeney v. Association* (Tex. Civ. App.), 26 S. W. Rep. 290, holds that, under a statute similar to ours, the receipt or retention of a premium out of the loan is not in excess of the powers of the corporation. Section 8 of the statute provides:

" The board of directors shall hold such stated meetings as may be provided by the by-laws, at which the money in the treasury * * * shall be offered for loan in open meeting, and the stockholder who shall bid the highest premium for the preference or priority of loan shall be entitled to receive a loan of not more than the amount fixed by the by-laws as the full value of a share of stock (less the premium bid) for each share of stock held by said stockholder."

The transaction was plainly within the powers conferred by this section.

3. It is contended that the interest of Mary A. Billing was not bound by the mortgage; and, to sustain this contention, counsel cites *Naylor v. Minock*, 96 Mich. 182, and argues that under the authority of this case, if she had executed the mortgage herself, merely as a surety for her husband, it would have been void. This is true, for the reason that she could not pass the title to lands of which she was a tenant in the entirety, by her separate deed. But there is no such difficulty here. The husband and wife join. This is the only method by which such an

estate can be alienated, and the mortgage in this case was valid.

4. It is contended that, if the transaction is not *ultra vires*, it is not a loan, as far as Mary A. Billing is concerned, and the complainant can have only the money loaned, with interest, as any other lender would be entitled to under like circumstances. This contention of defendants is sufficiently answered by the discussion under the first head of this opinion. If it is competent for the borrower to secure the payment of a loan made to him by furnishing a mortgage given by a third person, it follows that the association can enforce such security. See the authorities cited.

5. It is contended that the mortgage is given for too large a sum, for the reason that the premium should have been reckoned on the amount of money received, and not on the face of the loan. We are not able to see the force of this contention. It would be immaterial by which method the computation was made, if the one intended were understood in advance; and it is evident that defendant did understand it in this case, for he accepted the money and executed the papers after the computation of the premium had been made, and the amount deducted from the face of the loan.

6. It is contended that the statute authorizing the formation of building and loan associations is class legislation, and unconstitutional. This contention is not supported by the authorities. On the contrary, such legislation has been upheld in a number of the states, while we have found but a single authority sustaining the contention of defendants' counsel,—the case of *Association v. Johnson*, 88 Ky. 191. We think the reasoning of the authorities which sustain the constitutionality of such statutes is in accord with sound principle and the previous holdings of this Court. As was said in *Holmes v. Smythe*, 100 Ill. 413:

"The statute under which the association was organized is a general law, applicable to all the citizens of the state who choose to bring themselves within the relations and circumstances provided for by it."

See, also, *Association v. Read*, 93 N. Y. 474; *McLaughlin v. Association*, 62 Ind. 264; *Trust Co. v. Whithed*, 2 N. D. 82; *People v. Bellet*, 99 Mich. 151.

It is said by defendants' counsel that, under the practical operation of the law, those who take stock and are not borrowers earn large profits at the expense of those who are borrowers, and especially the weaker members, who make default and suffer fines. On the other hand, it may be said that the organizations open a way for people of limited means, and wage earners, to acquire homes, by making small payments at stated intervals, and that, if the system adopted places a premium on thrift and promptness, it is in harmony with all laws of economy. But these arguments relate rather to the wisdom of such provisions than to their constitutionality.

7. In the decree the court below directed that the bond be reformed by striking the name of Mary A. Billing therefrom. This order was unnecessary. While the bond was in the form of a bond of both defendants, yet as the proofs showed that Mary A. Billing was a married woman, the wife of the defendant, and was not personally liable upon it, and no personal decree was sought against her, it was competent for the court to enter a personal decree against her codefendant, who was the only one personally bound by the instrument, and this could be done without any reformation of the pleadings.

8. The only remaining questions which we think require discussion are those relating to the method of stating the account. The defendants insist that there should be a foreclosure of the stock before resort is had to the mortgage, or that, at least, the bill should ask for a foreclosure

of the stock in connection with the mortgage foreclosure. A copy of the bond is attached to the bill, and contains the provision that, if default be made in the payment of the installments of the principal money or interest, etc., for the space of six months,—

"The said 15 shares of stock of the first series, on which the said loan is obtained, and all other stock issued by the said obligee, and this day transferred as collateral hereto, may at any time thereafter be declared forfeited to the obligee as for non-payment of dues, and thereupon revert to said obligee, its successors or assigns, as forfeited stock, and the withdrawal value thereof, at the option of the obligee, its successors or assigns, be applied to the satisfaction of the above indebtedness; and, in such case or cases of default in payment, the whole principal debt aforesaid, and interest, shall, at the option of the obligee, its successors or assigns, immediately thereupon become due and recoverable, and payment of said principal sum and all interest thereon, as well as any payment on said shares of stock subscribed for and pledged, and all fines and taxes as aforesaid then due, may be enforced and recovered at once," etc.

It is evident that no formal foreclosure is contemplated as necessary for the purpose of applying the value of the stock to the extinguishment of the debt. It is contemplated that the payments on the stock, together with its earnings, shall remain in the hands of the company, and be applied, without foreclosure, to the reduction of the claim,—at least, at the option of the company. In the present case the complainant stands ready to credit the earned value of the stock on the mortgage, and has made such application.

Section 10 of the act provides that—

"A borrower may repay a loan at any time, and in the event of the repayment thereof before the expiration of the eighth year after organization of the association, or the date of issue of the series of stock in such association on which the loan may have been made, there shall be re-

funded to such borrower one-eighth of the premium paid for every year of the said eight years then unexpired: *Provided,* that, at the time of such repayment, the stock upon which such loan is based shall be withdrawn in the manner provided in section 6 of this act relative to withdrawing stockholders."

Section 9 provides that—

"In case of non-payment of installments or interest and fines by borrowing stockholders for the space of six months, payments of principal and interest and fines, without deducting the premium paid or the interest thereon, may be enforced by proceedings against their securities, according to law, upon the order of the board of directors."

Section 11 provides that—

"Corporations organized under this act being of the nature of co-operative associations, therefore no premium, fines, nor interest on such premiums that may accrue to the said corporation, according to the provisions of this act, shall be deemed usurious."

We think the language of this statute is very plain, and susceptible of but one interpretation, and that is one which excludes any right in the borrower to a deduction on account of premium paid, except in case of a voluntary payment of his debt before maturity. It must be admitted that this is a seemingly harsh provision, but we do not think it was beyond the power of the Legislature to enact such a provision, and it does not rest with us to overturn the plain provisions of the statute.

We think the complainant was entitled to a decree amounting on the 7th of January, 1895, the date of the computation, to $1,411.22. The decree will be for this sum, with interest, less the credit for certain insurance money now in the hands of the American Commercial and Savings Bank of Saginaw, deposited to await the determination of the suit, the avails of which will be applied on the decree. Complainant will recover costs of both courts.

McGrath, C. J., Grant and Hooker, JJ., concurred. Long, J., did not sit.

### DEED TO HUSBAND AND WIFE.

For cases bearing upon the question of the estate created by a joint deed to husband and wife, see:

1. *Fisher v. Provin*, 25 Mich. 347, where land was conveyed to "Wilber Fisher and Jane Fisher, his wife, their heirs and assigns, forever." And it was held that the grantees did not take as tenants in common; that on the death of the husband the whole title inured to the wife; that there is nothing in the provisions of the Constitution and statutes relating to the rights of married women which will convert such estate into a tenancy in common.

2. *Insurance Co. v. Resh*, 40 Mich. 241, where a married man, who was with his wife in possession of a house granted to him and his wife by the same deed, obtained insurance on the house, describing it as "his frame building, occupied by assured for residence and hotel," etc. In his application for the insurance the assured stated that his title to and interest in the property was absolute. In a suit upon the policy the insurance company defended on the ground, among others, that the assured had misdescribed his interest. And it was held that the misrepresentation of the title was in the highest degree important; that the assured had no absolutely inheritable interest at all; that he was neither a tenant in common nor an ordinary joint tenant; that his estate, in case of his death, went by survivorship to his wife, and during their lives, whatever his right may have been, it was not an undivided half of the property.

3. *Manwaring v. Powell*, 40 Mich. 371, where a husband and wife were joint purchasers at a foreclosure sale, and the commissioner's deed was made to them jointly. And it was held that the grantees took by entireties, and whatever would defeat the husband's title would also defeat that of the wife.

4. *Jacobs v. Miller*, 50 Mich. 119, 124, where, pursuant to an order for the sale of lands belonging to infants, the guardian conveyed the land to "Leo E. Taufkirch and Margaret Taufkirch, his wife, their heirs and assigns." And it was held that the grantees did not take by moieties, but became seised of the entirety; that the surviving grantee took the whole; that during their joint lives neither could alien so as to bind the other; and that the estate conveyed was not affected by the statute of partition.

5. *Vinton v. Beamer*, 55 Mich. 559, where a life estate in land was conveyed to a husband and wife, and the survivor of either of them. And it was held that the interest of the husband in the land could not be lawfully levied upon and sold under an execution issued upon a judgment against him alone.

6. *Speier v. Opfer*, 73 Mich. 35, where a husband and wife contracted for the erection of a building upon land which had been deeded to them jointly. And it was held that, the land being held by

husband and wife jointly, by entireties, it could not be treated as the separate property of the wife, so as to make her liable under the contract.

7. *Bassett v. Budlong,* 77 Mich. 338, 347, where a quitclaim deed from a husband, purporting to convey to his wife, and to her heirs and assigns, forever, the farm on which they resided, was declared to be upon certain express conditions and reservations following the *habendum* clause, namely, that the grantee should not convey or mortgage the land during the lifetime of the grantor without his written assent or his joining in the conveyance, and, in case of the death of the wife prior to the husband's death, the land should revert to him and to his assigns. And it was held that the deed did not convey the land to the grantee in fee-simple absolute, but that the effect of the arrangement entered into was that the title should, in the event of the death of either of the parties, pass to the survivor.

8. *Dowling v. Salliotte,* 83 Mich. 131, and *Auditor General v. Fisher,* 84 Id. 128, holding that, if the fact of the relationship of the grantees as husband and wife is not stated in the conveyance, it may be shown by parol testimony.

9. *In re Lewis Appeal,* 85 Mich. 340, holding that a husband and wife take as tenants by entirety, and not as joint tenants, under a joint deed to both, and that the estate thus created, with the attendant right of survivorship, is not affected by a decree of divorce. This case overrules the decision in *Dowling v. Salliotte,* 83 Mich. 131, in so far as it holds that under our statute husband and wife, under a grant to them jointly, do not take by entireties.

10. *Newlove v. Callaghan,* 86 Mich. 297, where a judgment creditor's bill was filed to reach the interest of the husband in lands conveyed to himself and wife jointly. At the time of the purchase of the land, which was paid for by the husband and wife jointly, the husband was indebted to the complainant in the amount of his judgment. The defendants owned jointly other real estate of the value of $20,000, purchased prior to the origin of the debt due complainant, and the husband owned no separate property. The answer set forth that the object of taking the title to the lot in question in the joint names of the husband and wife was "simply that the survivor should own the same, as they had no children." And it was held that estates in entirety cannot be created at the expense of creditors, and held in fraud of their rights.

11. *Naylor v. Minock,* 96 Mich. 182, holding that a mortgage executed by a wife upon land owned by herself and husband as tenants in the entirety, to secure the repayment to their son of money expended in the defense of his father on a criminal charge,

and to be expended in his maintenance at an asylum to which he was about to be sent on his acquittal on the ground of insanity, is invalid in its inception to convey any estate, and is ineffectual to convey the title acquired by the wife on the death of the husband.