IOWA SAVINGS & LOAN ASSOCIATION, Appellant, v. LAWRENCE HEIDT, et al.

**Building and Loan Associations:** A building and loan association may retain from the amount of a loan to a member the expenses of recording the mortgage, procuring an abstract, and of its examination by an attorney, necessary appraiser's fee, and a percentage on his shares necessary to meet the expenses of the management of the transaction.

**PREMIUMS.** Code 1873, chapter 6, title 9, authorizing building and loan associations to receive "premiums bid by members for the right of precedence in taking loans," does not give an association the right to exact a specified premium, where there is no competition, and the premium added to the interest exceeds legal interest.

**EXPENSES:** *Usury*   A deduction of a specified part of the dues paid to a loan association for necessary expenses of management is lawful, and interest paid upon the sum deducted will not justify a plea of usury.

**SAME.** Payment by a borrower of the lender's necessary expenses in making the loan, in addition to legal interest, does not constitute usury.

**FINES.** Fines imposed by a building and loan association on a borrower of five cents on each share for the first default, and ten cents for each subsequent default, are not so unreasonable as to be void.

**CURATIVE ACTS.** Acts Twenty-sixth General Assembly, chapter 85, section 9, providing that interest on loans by building and loan associations to members shall not be deemed usurious, applies to loans made before its enactment, since that section became section 1898 of the Code, which Acts Twenty-seventh General Assembly, chapter 48, amended to make it applicable to loans made before the Code took effect.

**CONSTITUTIONAL LAW.** A curative act which merely takes away the privilege of pleading usury does not change the agreement, but only removes a bar to its enforcement, and is not an unconstitutional impairment of a vested right:

**SAME.** Code, section 1898, as amended by Acts Twenty-seventh General Assembly, chapter 48, providing that interest on loans by

building and loan associations should not be deemed usurious, pertains only to the remedy, and does not impair the vested rights of a member, though enacted pending an appeal from a decree in his favor on the plea of usury, and necessitating a reversal thereof.

SAME.    Code, section 1898, as amended by Acts Twenty-seventh General Assembly, chapter 48, providing that interest on loans by building and loan associations to parties shall not be deemed usurious, is not unconstitutional as class legislation.

CONSTRUCTION OF STATUTE.    Acts Twenty-sixth General Assembly chapter 85, section 9, declaring the amount recoverable from the borrower by a building and loan association, fixes the maximum recovery, but does not prevent an association from contracting to receive a smaller amount.

*Appeal from Polk District Court.*—HON. C. P. HOLMES, Judge.

TUESDAY, JANUARY 24, 1899.

ACTION in equity to foreclose a mortgage on real estate, and to cancel certain shares of stock held by defendant in plaintiff association. Defense—usury, which was sustained by the trial court. An accounting was had. A judgment of forfeiture was given in favor of the school fund, and plaintiff was awarded a decree for the sum of seventy-two dollars and eighty cents, without either interest or costs. It appeals.— *Modified* and *Affirmed*.

*Bailey & Ballreich* for appellant.

*Dudley, Coffin & Byers* for appellee.

WATERMAN, J.—Plaintiff is a building and loan association, having incorporated as such originally in 1889. On July 2, 1896, its articles were amended to comply with the requirements of chapter 85, Acts Twenty-sixth General Assembly. Defendant was the owner of ten shares of stock in said association, and on February 15, 1891, he borrowed from it the sum of one thousand dollars, giving as security his shares of stock in pledge and the mortgage in suit. At the time of

making the loan, plaintiff deducted from the amount of the loan the following sums: Attorney's fee for examining abstract, two dollars and fifty cents; appraiser's fee, two dollars; recording mortgage, one dollar; abstracter's fee, nine dollars. The remainder, nine hundred and eighty-five dollars and fifty cents, was paid to defendant. Defendant was to pay, according to the contract contained in his note and mortgage, the sum of seventeen dollars per month until the maturity of his stock. This amount was made up as follows: sixty cents per share, installments on his stock, six dollars; sixty cents per share, premium for the loan, six dollars; and fifty cents per share as interest on the money received, five dollars. Out of the dues on stock, the association deducted seven cents from each sixty cents paid, for expenses of management, but only so much of this was used or kept as was necessary for actual expenses. From time to time the surplus of the expense fund was carried to the credit of the stockholders.

I.   It is claimed that defendant did not receive the full amount of his loan, and this is correct. But the amounts deducted were necessary expenses in perfecting the loan. These sums were not retained by the association, but were paid to others, and were proper charges against defendant. *Association v. Johnston,* 106 Iowa, 218.

Some complaint is also made because of the deduction by the association of seven cents out of each sixty cents of dues, for expense of management. We see no ground for a member's objection to this method. It is not claimed that more was used for expenses than was actually necessary. Now, it is apparent that these expenses had to be paid by the members. If a fund was not raised in this way, the amount would have to be taken from the earnings. In any event the burden would fall on the stockholders.

II.   With these minor matters out of the way, we take up the next question in the case, which is the claim of usury. It is said (1) that the contract is usurious, because the premium exacted was not bid for the right of precedence in

taking the loan; (2) because interest was charged upon the face of the loan; and (3) because the fines and fees were exorbitant.    It is true that the premium was a fixed sum, established by the by-laws of the association, and chapter 6, tit. 9, Code 1873, was in force when this loan was made.    In that chapter such associations are given the right to receive "premiums bid by members for the right of precedence in taking loans," and then it is said the taking of such premiums shall not be held to be usury.    We are of the opinion that, under that statute, it was not lawful for the association to exact from a borrower, where there was no competition, an arbitrary sum in addition to the interest on his loan, where the whole amounted to more than legal interest; and we may say, without setting out the computation, that we think it did in this case.    In *Association v. Heider*, 55 Iowa, 424, and *Association v. Blackburn*, 48 Iowa 385, each of which involved a construction of the statute we are now considering, while usury was pleaded, the question presented now was not raised.    Except in name, the premium here does not differ in any way from interest.    It is paid for the use of money, and not for the privilege of getting the loan.    As it is claimed that the acts of plaintiff in exacting from defendant the various sums it did as consideration for the loan were validated by subsequent legislation, it may be well for us to determine to just what extent curative acts were needed.    We take up, therefore, defendant's further claims of usury.

III.    It is said that the loan was usurious, because interest was charged on the face of the note, and not on the amount actually paid to defendant.    The two cases last cited are thought by counsel for appellee to support this claim.    In those cases the premium charged for the loan was deducted at the time the loan was made, and was retained by the association for its benefit, and interest was collected upon the whole sum, including the amount of the premium; and this interest exceeded the rate fixed by law.    The items which defendant claims should not have been included in the principal in the

case at bar, and upon which interest was computed, are the two dollars and fifty cents for examining abstract and two dollars appraisement fee.    Both of these were legitimate matters of expense, as we have already said.    As we understand the record, while the two dollars fee was paid into the expense fund, it was the exact amount that was paid by the association out of that fund for the appraisement in the making of this loan; and the other fee was paid to an attorney for services actually rendered.    The payment by the borrower of the necessary expenses of the lender, incurred in making the loan, in addition to the legal interest, will not constitute usury.    *Smith v. Wolf*, 55 Iowa, 555.    These amounts were not exacted as a bonus by the association, and it got no benefit whatever from their payment.    This case is materially different from those upon which defendant relies.

IV.    Next, it is said that the fines charged were exorbitant.    Doubtless, a fine may be so unreasonable and excessive as to be void.    But these do not appear to be of that character.    Impositions proportionately as heavy have been approved in similar cases.    See 4 Am. & Eng. Enc. Law, 1042, note 4.    The statute authorized these penalties, and it fixed no limit to the amount that might be imposed.    The amount fixed by the by-laws of the association was five cents for the first default on each share, and ten cents for each subsequent default.    This amount was not exceeded in defendant's case.    He knew, or should have known, the terms of his membership when he purchased stock in the association, and we do not think he can be heard now to complain of an obligation which he voluntarily assumed.

V.    As we have found that the contract was tainted with usury because of the exaction of the level or arbitrary premium, it now becomes necessary to determine whether it has been purged of this illegality by subsequent legislation. This loan was made in 1891.    In 1896 the Twenty-sixth General Assembly passed an act (chapter 85) providing for the government, management, and operation of associations of

this character.    Section 9 of that act, so far as material, is as
follows:    "All building and loan and savings and loan associa-
tions upon receiving the certificate of the auditor shall have
power . * * * to assess and collect from members such
dues, membership fees, fines, premiums and interest on loans
as may in the articles of incorporation and by-laws have been
provided, and the same shall not be held to be usurious
* * * to make loans to members on such terms and condi-
tions as the articles of incorporation and by-laws provide.
* * * In case of foreclosure the borrower shall be charged
with the full amount of the loan made to him, together with
the dues, interest, premium and fines for which he is delin-
quent, and he shall be credited with the same value of his
pledged shares as if he had voluntarily withdrawn the same."
It is claimed by plaintiff that this section applied to contracts
made prior to its passage, and validated acts already done. .
This law is not expressly made retroactive, and we should
hesitate before giving it that effect, especially to the extent
claimed by plaintiff. But in view of our holding upon another
statute, which is set up, and which we shall next consider, it
is not necessary that we decide this question.

VI.    Section 9, which we have set out, with some
changes not material to be noticed here, went into the present
Code as section 1898.    The Twenty-seventh General Assem-
bly, by chapter 48, amended this section, as follows:
"The provisions of said section shall apply to and gov-
ern all contracts between building and loan and savings
and loan associations and their members, made and entered
into prior to the taking effect of the Code, and every such con-
tract shall in all actions and proceedings be construed and
enforced as in said section provided, and with the same force
and effect, as if made and entered into after the Code took
effect anything in the statutes in force when such contracts
were made to the contrary notwithstanding."    We think this
act was intended to make valid and enforceable all previous
contracts for loans, which were within the terms of section
1898, as the contract in suit clearly was.

The next question is as to the legislative power to do this. As a general rule, it may be said the legislature can validate any act which it might originally have authorized. *Windsor v. City of Des Moines,* 101 Iowa, 343; *City of Clinton v. Walliker,* 98 Iowa, 655. A number of objections are made to the application of this rule to the case at bar. First, it is said that the building and loan law of the state is unconstitutional, because it is class legislation. Some of the arguments advanced in support of this claim assail rather the policy of such statutes than the power to enact them. In theory, these institutions are profit-sharing. The amounts directly paid for the use of money go indirectly to the benefit of the stockholders, through the increase in the value of their shares. Where the loans are confined to shareholders, we can see good reason for exempting such associations from the operation of the usury law. That the constitutional power exists to make this exemption, we think, is without serious doubt. *Association v. Billing,* 104 Mich. 186 (62 N. W. Rep. 373); *Trust Co. v. Whithed,* 2 N. D. 82 (49 N. W. Rep. 318); *Archer v. Association* (W. Va.), 30 S. E. Rep. 241. See also, on the general character of these institutions, and the reasons for special legislation in their favor, *Hawkins v. Association,* 96 Ga. 206 (22 S. E. Rep. 711); *Association v. Monk* (N. J. Ch.), 30 Atl. Rep. 872; *Association v. Shields,* 71 Miss. 630 (15 South Rep. 793). Next, it is said the curative act is invalid, so far as this case is concerned, for to give it effect as against defendant would impair vested rights. The act in question was passed after the decree was rendered by the trial court in this case; and for this reason it is thought that defendant's rights had so accrued and vested as that they could not be disturbed or altered by such legislation. In *City of Clinton v. Walliker, supra,* the curative act was given application to a contract involved in a suit which was pending when the act was passed. The same holding was made in *Tuttle v. Polk,* 84 Iowa, 12. *Richman v. Supervisors,* 77 Iowa, 513,

was a *certiorari* proceeding to test the validity of an assessment and levy of a tax for building a levee. In a former proceeding, the action of the board of supervisors had been set aside, and the assessment declared void, by the circuit court, and this holding was affirmed by this court. After this final judgment, the general assembly passed an act authorizing a new assessment. This was had, and proceedings were again instituted to test the validity of the tax levied under the curative act. This last is the case we have cited. It was urged by the petitioners that they had vested rights under the first decision, but the claim was denied by this court. In *Huff v. Cook,* 44 Iowa, 639, defendant, a woman, claimed to have been elected to the office of county superintendent. In a proceeding to test her right to the office, the trial court held that she was ineligible because of her sex. She appealed. After the judgment below, an act was passed by the general assembly, which in effect declared that no person previously elected to such office should be disqualified from holding the same because of her sex. It was held by this court that the bringing of an action vests no right to a particular decision, and that defendant being eligible, when final judgment was pronounced, it should go in her favor. See, also, *Land Co. v. Soper,* 39 Iowa, 112, 124. It is difficult to perceive what right of the plaintiff in the case at bar was disturbed by the curative act, other than a mere privilege of pleading usury; and this pertains only to the remedy, which, it is uniformly held, may be altered at the legislative will. *Kossuth County v. Wallace,* 60 Iowa, 508; *State v. Squires,* 26 Iowa, 340. So far as the payments made and fines imposed are concerned, they were in accord with the terms of defendant's contract. The effect of the subsequent legislation was not to change the agreement, but only to remove a bar to its enforcement. The cause being triable *de novo* in this court, there seems no legal objection to the entering of a decree in conformity with the law as it now exists.

VII.   It is further urged against the validity of the subsequent legislation that it allows a recovery which may be greater than the amount fixed by the contract in some cases; and it is said that, in the case at bar, plaintiff could recover more under the law than it could lawfully claim on its contract.   But, so far as plaintiff is concerned, it is seeking nothing more than its contract calls for.   Furthermore, we do not think the measure of recovery specified in the law is meant to be mandatory, in the sense that the parties may not make a contract more 'favorable to the debtor, by which they will be bound.   The law fixes the maximum of recovery against a debtor, but we can see no reason why, within the limit specified, an agreement for a different settlement may not be made.

VIII.   Plaintiff is entitled to a judgment for the sum of five hundred and seventy-one dollars and .eighty cents, with interest at eight per cent. from November 1, 1895, the date of defendant's default.   We find this amount by adding the dividends to the dues and premiums paid, which makes a total of four hundred and twenty-eight dollars and twenty cents, and deducting this from the face value of the note.   We have made no deduction from defendant's credits for expenses, because we are unable to determine what the actual expenses were.   The amount plaintiff withheld from premiums for this purpose is given; but it appears that this was often too liberal an allowance, and left a balance to be carried to the loan fund. Plaintiff is entitled to charge defendant only for his share of the actual and necessary expense of management, and, as is said, we cannot determine what this would be.   It is manifest from what has been said that the judgment in favor of the school fund is erroneous.   Under the circumstances, we think an apportionment of the costs should be made.   Following the rule applied in *Land Co. v. Soper, supra,* the costs, both of the court below and of this court, will be equally divided between the parties. *Modified* as we have suggested, the decree against defendant will be AFFIRMED.