THE IOWA SAVINGS AND LOAN ASSOCIATION, Appellant, v.
M. A. CURTIS.

**Building Association Loan:** CHANGE IN ARTICLES AND STATUTE. Where
a building association makes a loan to a member subject to its
articles of incorporation, and afterwards, pursuant to their terms,
amends them to conform to law, and the member thereafter
recognizes the contract as valid, he cannot avoid it because the
law was not complied with when the loan was made.

STATUTES: *Usury.* The curative act of March 8, 1898, with reference
to usury amends Code, section 1898, so as to make it apply to all
contracts between savings and loan associations and their mem-
bers made and entered into prior to the taking effect of the Code.

**Costs:** APPOINTMENT. Where the decision of the appellate court was
based in part upon a statute enacted pending the appeal, costs
on appeal were directed to be paid, one-half by each party and
costs in the lower court were apportioned in the same way.

*Appeal from Cass District Court.*—HON. N. W. MACY,
Judge.

FRIDAY, FEBRUARY 3, 1899.

THE plaintiff is a mutual loan association organized
under the laws of Iowa. The defendant is a member of the
association, and was prior to March 24, 1890, and owned ten
shares of its stock, of one hundred dollars per share. On
that day she contracted a loan from the plaintiff of six hun-
dred dollars, and pledged as security therefor six of her ten
shares of stock, and also executed to plaintiff a mortgage on
certain property in the city of Atlantic, as further security
therefor. The note and mortgage refer to the articles of
incorporation and by-laws of the association, and the follow-
ing are provisions of the note: "I also hereby assign the
said shares of stock above described, being certificate No.
878, as collateral security for the above debt, to the said Iowa
Savings and Loan Association, and do hereby agree to pay

to said Iowa Savings and Loan Association the monthly installment of three and 60-100 dollars, the same being equivalent to sixty cents per share, on the said shares described by me, and the monthly installment of three and 60-100 dollars, as premium on said advance, the same being equivalent to sixty cents per share, and interest upon said sum of six hundred dollars, in monthly payments of three dollars, the same being equivalent to fifty cents per share for the first year, and thereafter a monthly sum sufficient to pay the interest on the amount due at the beginning of each year, at the rate of six per cent. per annum, until the full amount of six shares shall have been paid, at the times, in the manner, and at the place required by the articles of incorporation and by-laws of said association.   And, in case I fail to make any or all of said monthly payments, I further agree to pay all fines and penalties imposed by said association upon said stock, or each share of same; and, in case of a failure to make any or all of said payments for six months, the whole debt herein shall be due (the said association), and shall at once become collectible, without notice or demand from the said association, which sum shall be six hundred dollars, less the amount actually paid by me on the said stock upon the six shares herein assigned, together with the quarterly dividends placed to the credit of said shares, and in consideration of said advance payment, or upon failure to pay all of said monthly payments, as stated herein, and in accordance with the articles of incorporation and by-laws of the Iowa Savings and Loan Association, I agree to pay to said association, at its office in Des Moines, Iowa, the sum as above ascertained, together with eight per cent. interest thereon per annum from the date of the first failure to pay said monthly dues to said association, together with all taxes, insurance, or assessments advanced upon the security herefor, and also a reasonable attorney's fee for foreclosing the mortgage given to secure this note or the collection of this debt."   It appears that there were sixty-four payments of dues, premiums, and interest;

so that, of the dues paid, there were two hundred and thirty dollars and forty cents, of premiums two hundred and thirty dollars and forty cents, and of interest one hundred and ninety-two dollars. The following is a paragraph of plaintiff's petition, changed to conform to some admissions as to amounts paid: "Par. 7. That the defendant has paid the six shares of stock subscribed for and assigned to this plaintiff to better secure said loan, the monthly payment of three and 60-100 dollars ($3.60) for sixty-four consecutive months, making a total payment of two hundred and thirty dollars and forty cents, out of which the plaintiff has deducted, as agreed by the by-laws, a copy of which is hereto attached, marked 'Exhibit D,' and made a part hereof, and expense money, which amounts to twenty-five and 20-100 dollars ($25.20, leaving a balance due to the defendant upon said stock of two hundred and five and 20-100 dollars, upon which the defendant is entitled, according to the by-laws of said association, to three-fourths of the profits earned by said stock, which said three-fourths amounts to sixty-five and 65-100 dollars ($65.65), which sum, added to the amount paid in upon said stock, less the expenses, makes a total of two hundred and seventy and 25-100 dollars, which sum the plaintiff holds as a credit in favor of the defendant against said loan, leaving a balance due upon said loan of three hundred and twenty-nine and 15-100 dollars." This action is to recover such balance, and to foreclose the mortgage.

The defendant, by answer, claims a credit on the note of the full amounts paid as dues, premiums, and interest, and pleads usury in the contract. By way of counterclaim, the defendant shows that, at the time of making the payments on the six shares of her stock pledged as security for her note, she also made similar payments as to her four remaining shares, and makes it appear that by such payments she had more than paid the mortgage debt, and that after such payment she asked to have the six shares pledged for the payment of the note canceled, the mortgage set aside, and that

whatever remained to her of the additional shares she might be permitted to retain, which plaintiff refused, and required her to continue to pay interest, dues, and premiums until the maturity of all the shares, which defendant refused to do; and she asks that what remains of the payments on the six shares after the payment of the note—which defendant claims to be forty-two dollars and sixty cents—be applied as advance payments on the remaining four shares. The district court aggregated the payments of dues, premiums, and interest on the six shares (the amount being six hundred and fifty-two dollars and eighty cents), determined the contract to be usurious, found that the note was fully paid, and entered a decree canceling the note and mortgage, and denied to defendant any relief on her counterclaim. Both parties appealed.—*Reversed.*

*Baily & Ballreich* for appellant.

*Curtis, Folliett & Curtis* for appellee.

GRANGER, J.—I.   The case of *Association v. Heidt,* 107 Iowa, 297, disposes of a part of the questions presented in this appeal, such as usury and the effect of the curative act passed by the Twenty-seventh General Assembly.   See Acts Twenty-seventh General Assembly, chapter 48.   That case holds that what might otherwise be usury is cured by the act referred to.   It is pleaded by defendant that the plaintiff, when the loan was made, was not a "mutual building association," so as to come within the provisions of the law on that subject.   It does appear that at its organization, in August, 1889, the association was organized under "title nine of the Code of Iowa," such a statement appearing in the articles of incorporation.   Chapter 6 of that title is "Of Mutual Building and Loan Associations"; but it is urged that the provisions of that chapter were not com-

plied with at such organization, and were not until 1892, after the loan was made. Defendant was a member of the association for some months before the loan was made, and has so continued to be. In 1892, after the loan was made, the articles of incorporation were amended, in pursuance of their terms, so that the organization has been since that time under the provisions of that law. This change was made while defendant was a member of the association, and as her loan was made under the provisions of its articles of incorporation and by-laws, that were a part of her contract, the right to make changes in accord therewith is included in the contract. After the change was made, she continued to recognize the contract as valid by payments up to May, 1895. It is not to be said that there was not during that time a contract between her and the plaintiff. Its legal effect prior to March 8, 1898, might present another and a doubtful question. The present Code (section 1898) fully authorizes such a contract as the one in question, since its adoption October 1, 1897. The curative act of March 8, 1898, amends section 1898 of the Code so as to make it apply to all contracts between savings and loan associations and their members, made and entered into prior to the taking effect of the Code. This, under our holding in *Association v. Heidt, supra,* would make the contract valid.

We understand the court below to have found the mortgage debt paid, because the finding of usury justified the application of all the payments in extinguishment of the principal sum, and, as the aggregate of payments was more, that the six hundred dollars was canceled. It is on the same theory that it is now urged in this court that the debt is more than paid, and that there is an excess to be applied to the maturing of the other four shares of stock. As we hold, following *Association v. Heidt,* that there is no usury, the basis for appellee's claim fails, both as to the mortgage debt and for the maturing of the other shares.

It appearing that the plaintiff is a corporation under the provisions of chapter 13, title 9, of the Code, being that "Of Building and Loan Associations," and that the contract is not usurious, appellee's claim, both as to her mortgage debt and her counterclaim, must fail.    In view of these findings, the forfeiture under the contract because of nonpayments, so that the claim is now collectible, seems clear. Appellant, in argument, makes the amount of its recovery somewhat less than in the petition, which appears to be correct; and a judgment of foreclosure should be entered for two hundred and sixty-eight dollars and ninety cents, with interest at eight per cent. since September 1, 1895, with attorney's fees and costs, for the entry of which judgment the cause is remanded.    Because of our conclusion being based in part upon an act of the legislature passed since the cause was appealed, the costs in both courts should be paid by the parties, each one-half.— REVERSED.