J. M. Edworthy *et al.,* Appellants, v. Iowa Savings & Loan Association.

**Usury:** CHANGE IN STATUTES: *Repeal.* The defendant, a building and loan association, made a loan to plaintiff, which, because of premiums charged in addition to interest, was usurious. After the enactment of Acts Twenty-seventh General Assembly, chapter 48, extending to loans previously made, the provisions of Acts Twenty-sixth General Assembly, chapter 85, that loans of such associations could not be considered usurious because the premium and interest charged exceeded the legal rate, the loan was renewed, and new note and mortgage given for the amount then computed to be due. Acts Twenty-eighth General Assembly, chapter 69, section 12, 16, repealed Acts Twenty-seventh General Assembly, chapter 48. *Held,* that the repeal did not restore the defense of usury, which existed before Acts Twenty-seventh General Assembly were enacted, since by that act the bar of usury was destroyed, and defendant acquired a vested right to enforce the contract according to its terms, of which the legislature could not deprive it.

CURATIVE ACTS. Where, by a curative act of the General Assembly, the defense of usury to certain loans of building and loan associations was removed, such act did not repeal the usury laws as to such loans, and the repeal of the curative act left the usury law standing as before; Code, section 48, providing that the repeal of a statute does not revive the statute previously repealed by such statute, having no application to such a case.

*Appeal from Polk District Court.*—Hon. Charles A. Bishop, Judge.

Friday, May 24, 1901.

Action in equity to secure an accounting as to the amount due on a mortgage given by plaintiffs to defendant, and to effect redemption therefrom. There was an answer, and also a cross petition, in which the foreclosure of the mortgage was prayed. From a decree fixing the amount due on the mortgage, and foreclosing the same, plaintiffs appeal. —*Affirmed.*

*Dudley & Coffin* for appellants.

*Bailey, Ballreich & Preston* for appellee.

WATERMAN, J.—The question first discussed in this court is as to whether the loan is usurious. Plaintiffs borrowed the sum of $1,400 of defendant corporation, and secured its payment by a pledge of 14 shares of stock and a mortgage on real estate. After a number of payments had been made on said debt, and on the tenth day of July, 1897, a new mortgage was executed for the balance claimed to be still due, viz.: $900, and the present action is founded upon the latter instrument.

As a level premium was exacted from the borrower for the first loan, which, together with the interest charged, amounted to more than the legal rate, such loan was, as originally made, tainted with usury. *Iowa Savings Loan Ass'n v. Heidt,* 107 Iowa, 297; *Iowa Loan Savings Ass'n v. Curtis,* 107 Iowa, 504. The second mortgage debt, being but a renewal of a part of the first loan, was not purged of the usury. *Smith v. Coopers,* 9 Iowa, 376; *Campbell v. McHarg,* 9 Iowa, 354; *Garth v. Cooper,* 12 Iowa, 364; *Bank v. Eyre,* 52 Iowa, 114. There is no evidence that plaintiffs, when they executed the second note, intended to free the contract of usury. We held, however, in the *Heidt Case,* that chapter 48, Acts Twenty-seventh General Assembly, cured all prior contracts of this nature which were within the terms of section 1898 of the present Code, as the contract in suit seems to be, and made them enforceable against debtors, according to their terms, up to a maximum of 12 per cent. interest. But it is claimed on behalf of plaintiffs that the repeal of chapter 48, Acts Twenty-seventh General Assembly, by sections 12, 16, chapter 69, Acts Twenty-eight General Assembly, leaves the contract in the same condition as if the curative act had never been passed; that it was originally usurious,

and, while purged thereof by the curative act, the repeal of the latter left it still tainted. The effect of this act of the Twenty-eighth General Assembly is the only question, as we think, which we have to consider.

Section 1898 of the Code regulates the business and governs the contracts of building and loan associations, and, among other things, fixed the maximum interest rate which they may exact at 12 per cent. Section 1, chapter 48, Laws Twenty-eighth General Assembly extended the provisions of such section 1898 to all contracts of such associations with members, entered prior to the taking effect of the Code, and provided that such contracts might be enforced, "anything in the statutes in force when such contracts were made to the contrary notwithstanding." Section 12, chapter 69, Acts Twenty-eight General Assembly, repeals chapter 48, above mentioned; and section 16 of said acts of the Twenty-eight General Assembly legalizes all loans affected by the repeal of chapter 48, and permits a recovery of interest thereon at a rate not exceeding 8 per cent. The position of defendant is that by the curative act its original contract was validated, and that the attempt to take away this benefit or right was within the inhibition of both the federal and state constitutions, as impairing the obligation of contracts. On the other hand, it is insisted that the obligation of a contract, which may not be impaired by retroactive legislation on the part of the states, is what is included in the law existing when the contract was made. Such prior law, it is said, enters into, and becomes a part of, the agreement, and this element of the contract is what is meant to be protected by the constitutional principle under consideration; that what was gratuitously added thereafter by the legislature may at any time be taken away.

With this brief statement of the claims of the respective parties, we shall proceed to the solution of this, to us,

novel problem. First, however, it is necessary to notice an-
other claim made by defendant. It is asserted the
enactment of the curative act effected the repeal of the
statute against usury so far as this contract is con-
cerned, and that, under section 48 of the Code, the repeal
of the curative act would not have the effect to revive such
previously repealed statute. This position is not tenable.
The curative act merely removed a bar to the enforcement
of this contract. It did not repeal the statute against usury.
That statute stood, and still stands. A law curing defective
acknowledgments cannot be said to repeal the statute pre-
scribing the form to be observed in taking them. It merely
dispenses with some matter which it recognized as required,
in the absence of such dispensation.

We go now to the main question. It has been said that,
so far as the provisions of the federal constitution are con-
cerned, if a law devesting private rights does not impair
the obligation of contracts, or is not *ex post facto,,* it is
within the legislative power. *Satterlee v. Matthewson,* 2
Pet. 380 (7 L. Ed. 458); *Proprietors of Charles River
Bridge v. Proprietors of Warren Bridge,* 11 Pet. 430 (9 L.
Ed. 773). How far, if at all, this rule has been modified
by the fourteenth amendment to the national constitution,
we have no occasion to inquire for section 9 of
the bill of the rights of our state constitution,
which guaranties property rights, save where taken by due
process of law, doubtless protects all rights which have
vested, even though they may not have arisen out of con-
tract. *Brinton v. Seevers,* 12 Iowa, 389; Wade, Retroactive
Laws, section 297; Sutherland, Statutory Construc-
struction, section 480; Cooley, Constitutional Limi-
tations, 436. We are of the opinion that the rights
which accrued to defendant under the curative act are saved
to it, both because the repeal, if it affected them would im-
pair the obligation of a contract, and because it would dis-
turb or take away vested rights. While it is true the laws

creating the obligation of a contract are only such as are in existence when the contract is made (Pomeroy, Constitutional Statutory Law, 593, 594; *McCracken v. Hayward,* 2 How. 608 (11 L. Ed. 397); *Walker v. Whitehead,* 16 Wall. 314 (21 L. Ed. 357); yet it is equally true that a contract between the state and an individual may be made by the passage of a law. Although the repeal of the curative act did not affect the terms of the agreement as made between plaintiffs and defendant, the General Assembly did thereby attempt to take a way a right which it had given after this agreement was made. It is said on behalf of defendant that the parties altered their situation in reliance upon the curative act. That statute, it is contended, increased the apparent assets of the association; that new members joined and withdrawing members were settled with on the basis of these apparent assets. There is, however, no evidence of these facts in the record. The most that appears is that defendant is a going concern. We cannot assume sufficient on the strength of this single fact to warrant us in defeating the legislative will. But may there not have been a right which vested under the curative act, even though the situation of the parties was not changed by their acting under it? The curative act gave a right to defendant—a right to enforce this contract according to its terms, and collect thereunder 12 per cent. interest. Though wholly gratuitous, this right accrued to defendant immediately on the taking effect of the act. It does not follow that because the General Assembly could give, it could also take away. Let us suppose it gratuitously granted title to a tract of swamp land to some certain person by an act passed; certainly on no sustainable theory could it be said that thereafter it could devest this title by a repeal of the act. See *Dobbins v. Bank,* 112 Ill. 553. What is given by grant is in the nature of a contract with the grantee. Again, let us suppose that a conveyance between parties lacks some statutory requirement necessary to its validity, and by a subsequent legalizing act it is made valid.

Under the conveyance, the equitable title would have passed, and the effect of the legalizing act would be to add to it the legal title. If the effect of the legalizing act would be to create and vest a legal title, irrespective of anything done under it by the parties, it would seem manifest that this could not afterwards be disturbed without their consent. That the legislature may validate a deed which is invalid for want of compliance with some statutory requirement, see *Pelt v. Payne,* 60 Ark. 637 (30 S. W. Rep. 426). That is, such a deed may be made, retrospectively, to have the force and effect intended by the parties. On this point, see, also *Bresser v. Saarman,* 112 Iowa, 720. A vested right is an immediate fixed right of present or future enjoyment. *Marshall v. King,* 24 Miss. 85. The general assembly may take away by statute what was given by statute, but not so as to disturb rights vested under the former law. *Bank. v. Freeze,* 18 Me. (6 Shep.) 109 (36 Am. Dec. 701); *People v. Livingston,* 6 Wend, 526, 531. It does not seem to make any difference in the rule that the grant by the General Assembly was gratuitous. *Louisville & T. Turnpike Road Co. v. Boss* (Not officially reported), (Ky.) (44 S. W. Rep. 981). While a mere privilege such as a license may be revoked at the pleasure of the general assembly, *West v. Bishop* 110 Iowa, 410, and cases cited, yet this rule rests upon police powers which do not enter into the issue in the case at bar. The state cannot deprive itself of its right to exercise a police power in any case where the health, morals, or safety of the people are concerned. *Toledo, W. & W. Ry. Co. v. City of Jacksonville,* 67 Ill. 37 (16 Am. Rep. 611); *Stone v. Mississippi,* 101 U. S. 814 (25 L. Ed. 1079). It was the exercise of this reserved right which was sanctioned in the *West-Bishop Case.* But here the curative act gave a right which the state could lawfully bargain away. Let us take another case for purposes of illustration. In the most usual instances of legalizing legislation, where defec-

tive acknowledgments of previously recorded instruments are cured, the effect is given such instruments, and gratutiously given, of imparting notice of their contents to the public. This quality is bestowed immediately upon the laws going into effect. No acceptance or other act is required on the part of one in whose chain of title such an instrument forms a link, in order for him to get the benefit of the law's provisions; or, perhaps, we had better say, his acceptance is legally implied. The owner of such title is given a certain right, as against the public, which he did not possess before the enactment of the law—a right to have the instruments which furnish evidence of his title speak for themselves to the world. The law thus enters into, and becomes a part of, his evidence of title. A legalizing act cures some evil or omission. It does this upon going into effect. It does not operate only through its continuance in force. That is, its enactment does not merely create a condition, but accomplishes, *eo instanti* a fact. The cure being effected, the evil is not restored by the repeal.

Another contention of appellant is that the contract, as originally made, being for a usurious rate of interest, was against public policy, and even if the curative act entered into and became a part of it, "the contract falls with the repeal of the act." We think what we have already said meets this claim. But it may be further said that usury is only vicious because made so by statute. The general assembly might, in advance, authorize any rate of interest it saw fit, and no rate which it authorized could be said to be against public policy. What it might have sanctioned in advance it can validate afterwards. See the *Heidt* and *Curtis Cases*, heretofore cited. In this connection, appellant relies upon 23 Am. & Eng. Enc. Law, 506. The text to be there found, after stating the general rule that the repeal of a law which has entered into and become a part of a contract will not take away rights which have accrued under such contract, concludes with the phrase on

which reliance is had: "But, if a contract is against sound morals, natural justice, and right, it falls with the repeal." However, true this may be, it does not warrant the conclusion which appellant seeks to draw from it. The original contract in the case at bar, while in violation of statute, did not contravene sound morals nor any principle of natural justice.

To sum up our conclusions, we may say that, as originally made, this mortgage contract was for the payment of the rate of interest now sought to be collected. The statute against usury, however, barred its enforcement in the creditor's favor. The curative act removed this bar, being somewhat in the nature of a grant of right or power to defendant, giving to it the benefits which the parties had agreed upon. To take away this right or power is to devest a right which accrued on the taking effect of such act. The curative statute was in the nature of a contract between the state and the defendant, and being such, it was out of the power of the general assembly afterwards to impair it. In so far as sections 12, 16, chapter 69, Acts Twenty-eighth General Assembly, attempt to cut off rights which had thus vested under the curative act, they are invalid, because of falling within the inhibitions of both the federal and state constitutions. Section 10, article 1, Constitution United States, sections 9, 21, article 1, Constitution Iowa.

We are not able to say with certainty whether the method of computing plaintiff's credit is in issue here. The fact is that this case, with those of *Briggs* and *Craig* against this same defendant, decided at this term, were submitted together. 114 Iowa, 232. The constitutional question we understand to be common to each, but further than this we cannot determine with assurance the issues. However, the question of accounting, if in the case, was the same as that presented on *Brigg's Appeal,* and is ruled by what is there said.—AFFIRMED.