## HUNT v. COLLINS.

An amendment of a petition, showing the character in which the plaintiff sues, but not changing the plaintiff, is permissible.

After the filing of a plea in abatement, alleging that the plaintiff held the cause of action in a representative capacity, and not in his own right, and after a finding for the defendant on such plea in abatement, and before judgment is rendered on the finding, the plaintiff may amend his petition, so as to show the representative capacity in which he sues, upon such terms as the court may impose.

The allegations in a petition which are intended as a basis for a writ of attachment, do not touch the cause or right of action; and if insufficient, cannot be reached by demurrer.

Where the allegations in a petition for an attachment, are insufficient, or where they are improperly alleged, they are to be reached by a motion directed at the writ of attachment.

Where an action was brought on three promissory notes, and a book account, to which the defendant answered, alleging that he did not owe the account; that the promissory notes were signed by him as accommodation notes only, for the benefit of St. M., who was the real debtor, and who put them in circulation; that the larger of said notes was afterwards taken up and paid by St. M.; that the other two notes came into the hands of T. and H., who obtained payment of them, by suit, judgment, and execution; and that the plaintiff did not hold the notes in his own right, but as assignee of St. M., for the benefit of his creditors; to which the plaintiff replied, denying that the notes were given for the accommodation of St. M., and that he was the real debtor; denying that the two notes were paid by suit, &c.; and averring that no suit was ever commenced or judgment recovered against the defendant, prior to the commencement of this suit; and where it appeared that the plaintiff, St. M. and T. & H. resided in St. Louis; that St. M. had indorsed the two notes to T. & H., who commenced an action against the present defendant, as maker, and St. M. as indorser; that no service was had upon C., who was then residing at Dubuque; that T. & H. discontinued the action as against C., and took judgment against St. M.; and that execution issued on this judgment, which was returned satisfied; and where C. offered in evidence the transcript of the judgment against St. M., which was objected to, and the objection sustained; *Held*, That the judgment against St. M., constituted no defence for C., and was properly ruled from the jury.

Where in an action on three promissory notes, the defendant pleaded that the plaintiff held the notes as assignee of St. M., for the benefit of his creditors, and that the notes were accommodation notes for the benefit of St. M.; and where the defendant gave the plaintiff notice to produce the original assignment from St. M., which not being produced, the defendant claimed that such refusal raised the presumption that the assignment contained something that

would defeat the plaintiff's right to recover, which view of the law, the court overruled; *Held*, That the neglect or refusal of the plaintiff to produce the original assignment, only had the effect to admit secondary proof; and that there was no error in the ruling of the court.

### *Appeal from the Dubuque District Court.*

· THE plaintiff sued on two promissory notes of five hundred dollars each, and one of nine hundred and forty two dollars, payable to Edward St. Michael, or order, and upon an open account for merchandise sold to defendant, by St. Michael, all which demands are alleged to be duly assigned to Hunt, the plaintiff. The defendant contends, that Hunt cannot sue on these demands as in his own right, for that he holds them only as the assignee of St. Michael, for the benefit of creditors. And then he pleads that he does not owe the account, and that the notes are (as to him) accommodation notes, signed at the request of St. Michael, who is the real debtor. The remaining facts will appear in the opinion of the court, in connection with the questions made. Judgment was rendered for the plaintiff, and the defendant appeals.

*Smith, McKinlay & Poor*, and *Wm. Vandever*, for the appellant.

The general rule laid down in 1 Chitty Pl. 1, is that "the action should be brought in the name of the party whose legal right has been affected, or by or against his personal representative." This is also the rule of the Code, § 1676. "In actions brought by or against particular persons, as assignees, executors, &c., the special character in which they sue should be stated in the commencement, though it would be sufficient, if it appeared in other parts of the declaration." 1 Tidd's Prac. 432; 1 Chitty's Plead. 284; 1 Saund. Plead. & Ev. 413.

A cause of action which arises subsequent to an assignment, or subsequent to a decree of bankruptcy, it seems, may be prosecuted by the assignee in his own right, and so as to contracts made by an executor; but where the cause of action arose prior to the assignment, or to the issuing of a de-

cree in bankruptcy, the assignee must be described in the declaration in his representative character. Owen on Bankruptcy, 258; *Evans* v. *Mann*, Cowper's Rep. 569. In the latter case, Lord MANSFIELD says: " On consideration, there seems to be this distinction. If the assignees bring an action on a contract made by the bankrupt before his bankruptcy, they must state themselves in the declaration to be assignees." In the case at bar, the cause of action arose *prior* to the assignment.

The plaintiff relies upon the case of *Roop* v. *Clark, guardian of Seeton*, decided by the Supreme Court of Iowa, at June term, 1854. That is not a parallel case. In that case, the action was brought in the name of Seeton, an insane person; and the court, under sections 1698 and 1699 of the Code, allowed the name of the guardian to be substituted and the suit went on without abatement. There was no change of parties in interest. The same legal right was affected both before and after the substitution. But in the case at bar, there is no question but that Hunt, who sues in his own right, should only occupy a representative position. He denies his representative character; we have proved it, and the issue being found against him, it is respectfully submitted that the suit must fail. The Supreme Court at the same term that they decided the case of *Roop* v. *Clark*, just referred to, also decided, in the case of *Taylor, adm'r, &c.* v. *The Stage Company*, that a person suing in a representative capacity cannot blend in the same action, matters which pertain to them in an individual capacity. To permit Hunt to bring this suit in his own right, would be to permit such a mixture of individual rights and of rights in a representative capacity; although such might not be the case in the present suit. To permit a representative to sue in *his own right*, would also prevent a defendant from pleading any proper matter of set-off he might have against the *real* owner of the claim sued on.

*Burt & Barker*, for the appellee. [No brief of the counsel for the appellee, was found among the papers.]

WOODWARD, J.—The plaintiff's petition was drawn as if he claimed to recover on the demand, sued in his own right, as he is not alleged to be an assignee, nor as claiming in any other representative character. The facts, it is apparent, would materially affect defendant's right of defence on the notes. But no question is made as to the manner of getting at this. The defendant pleaded in abatement to the petition, that plaintiff had no right to recover in his own name alone, and as for his own benefit, but that he held in a representative character, and must sue as such. The plaintiff took issue on this plea. The issue was found for the defendant, and then before judgment, the plaintiff asked leave to amend, which was granted; and to this the defendant excepted. The propriety of allowing this amendment at that stage of the suit, is the first question for our determination. In the case of *Bebb* v. *Preston, as garnishee*, 3 Iowa, 325, this court held, that an amendment may be made after the trial of an issue, and the cause has been taken to the Supreme Court and reversed, and sent back for a new trial. It is here that this militates against the common law ideas, but it is within the letter, and we believe within the spirit too, of the Code, § 1758. Our present system aims to get at the essentials of pleadings, and to allow amendments, rather than send a party out of court, subject, of course, to the terms which may be put upon him, which terms are entirely within the control of the court.

A party asking an amendment at so late a stage as in the present case, would naturally expect to pay the whole expense caused by the issue; and what is the substantial difference between this and his taking a nonsuit and commencing again, except that by taking an amendment, rather than a nonsuit, time is spared, and an action or a cause of action is sometimes saved, which would otherwise be lost, as by a limitation, or by other cause; and this is the precise effect which we understand our present system of statute law, in relation to pleading, to aim at. It is to save the rights of persons, and not to have them sacrificed to the mere rules of pleadings, if they can be placed in a correct attitude, the

party himself bearing the expense of setting his case right. It is not intended to intimate that there may not be cases where the amendment could not be made on any terms, but these remarks apply to those cases which come within the reach of amendments. We think, that an amendment showing the character in which the plaintiff sues, but not changing the plaintiff, is admissible.

The plaintiff having amended, so as to show his trust or representative character, the defendant demurred to the petition as amended, on the ground that it did make a case which warranted the issuance of the writ of attachment. This demurrer then goes to the facts forming the basis for the attachment. These are not demurrable, for they do not touch the cause, or right of action. Our attachment law seems to recognize the praying for an attachment, either by separate petition or in the principal petition; but, in the latter case, these allegations no more form a ground for demurrer to the action, than in the former. In either case, if sufficient be not alleged, or if it be badly alleged, it is reached by a motion directed at the attachment. The demurrer was properly overruled.

The defendant then answered the amended petition, alleging that he did not owe the account; that the promissory notes were signed by him as accommodation notes only, for the benefit of St. Michael, who was the real debtor, and who put them in circulation; that the larger of said notes for $942, was afterwards taken up and paid by St. Michael; that the two notes for five hundred dollars each, came into the hands of Thomas & Hudson, who obtained payment of them by said judgment, and execution; and that the plaintiff did not hold these demands in his own right, but as assignee of St. Michael, for the benefit of his creditors. To this the plaintiff replies, denying that the notes were given for the accommodation of St. Michael, and that he was the real debtor. He farther denies, that the two notes of five hundred dollars were paid by suit, &c., against this defendant, (Collins,) and he avers that no suit or judgment, was ever commenced or re-

covered upon said notes, against this defendant; prior to the commencement of this action.

Under these pleadings, on the trial the defendant offered in evidence the transcript of a judgment, rendered in Missouri, in relation to which, it is necessary to state the facts. The plaintiff, Hunt, St. Michael, with Thomas & Hudson, resided in St. Louis. St. Michael had indorsed the two notes of five hundred dollars, to Thomas & Hudson, who commenced an action against Collins as maker, and St. Michael as indorser. No service on Collins was procured, he residing in Dubuque. Those plaintiffs discontinued the action as against him, and took judgment against St. Michael. Execution issued, which is returned satisfied. On the trial of this action in Dubuque county, the transcript showing the above matters, was offered in evidence by Collins, the defendant. Being objected to by the plaintiff, Hunt, the court ruled it out. To this the defendant excepts. It was important to the defendant, that it should appear in some manner, either by his own pleading or by the plaintiff, (and might it not be made to appear in either way ?) that the plaintiff held as assignee, and not in his own right, for then he had only the rights of St. Michael, and defendant could show that they were accommodation notes ; but for what does he wish to introduce the transcript of the judgment from Missouri ? It is to show that St. Michael had paid the notes. And of what consequence is this fact to the defendant ? The only important issue was, whether the notes were signed by him for the accommodation of St. Michael. If they were accommodation notes, then neither St. Michael, nor his assignee, Hunt, could recover against Collins, whether the former had paid them or not. It was immaterial to Collins, whether they were paid or not, and whether judgment had been recovered on them against St. Michael, so far as regards the relations between them, the maker and payee.

On the other hand, if they were not accommodation notes, then St. Michael or his assignee, have a right to recover on them, whether paid to the indorsees of the latter or not. In other words, in the one case St. Michael could not recover

of Collins, whether the former had paid or not, and in the other, he could recover with the same indifference in respect to his paying. The same train of thought shows that the judgment offered in evidence, formed no defence for Collins. He needed only to show that the notes were an accommodation transaction, and that being done, there was an end of the plaintiff's case ; and failing to make this showing, there was equally an end to his own case, so far as it depended on this issue. The refusal to admit the transcript was not error.

Another error is assigned on the following circumstances. The defendant gave notice to the plaintiff, to produce the original assignment from St. Michael. This not being produced on the trial, the defendant insisted, that such neglect or refusal, raised the presumption that the assignment contained something which would defeat the plaintiff's right to recover, which point the court ruled against him, and he excepted. We are not prepared to say, that the court erred here. It is very probable that such a refusal would, under circumstances, constitute an item to be considered, with others, by a jury, and from which they might make an inference, but we are not aware that there is such a definite and absolute inference of law, as is impliedly claimed. The neglect to produce, opened the door to secondary proof, but it is apprehended, that this was all the effect of it in the present case, when that circumstance stood alone, and that it did not of itself warrant the conclusion demanded by the defendant.

The foregoing thoughts cover the essence of the cause. As the issues formed, embraced the question of the accommodation character of the notes, and as that issue was found for the plaintiff, there is nothing of substance left, and the judgment of the District Court is affirmed.