IOWA BUSINESS MEN'S BUILDING & LOAN ASSOCIATION, Appellant, v. HANS P. BERLAU, F. S. WIDLE, ET AL.

**Building and loan associations:** ULTRA VIRES. The defense that an act of a building and loan association is *ultra vires* cannot be taken advantage of unless pleaded.

**Maturity of stock:** REPAYMENT OF LOAN. In an action to recover a claimed balance on a building and loan association note and mort-

gage, the provisions of the note and of the certificate of stock issued by the association are construed, and it is held that by the terms thereof the stock matured upon eighty-four full monthly payments and that the debt was thereby discharged.

**Estoppel.** Where a building and loan association, in negotiating a loan, places a construction upon its contract in conformity with the understanding of a member as an inducement for him to borrow its funds, it cannot afterwards contend that such was not the meaning of its contract.

*Appeal from Marshall District Court.*—HON. OBED CASWELL, Judge.

TUESDAY, MARCH 8, 1904.

As its name indicates, the plaintiff is a building and loan association organized and doing business under the laws of this State. In January, 1894, the defendants Berlau, who are husband and wife, borrowed of the plaintiff the sum of $500, for which amount they executed their joint note and secured the same by a mortgage on real property. At the same time and as a part of the same transaction, the defendant Hans P. Berlau became a member of the plaintiff association and the owner of five shares of its capital stock which he assigned to the plaintiff as collateral security for the loan. The note given by the defendants is as follows:

For Value Received, We hereby promise to pay to the Iowa Business Men's Building and Loan Association at its office in Marshalltown, Iowa, the sum of Five Hundred Dollars, being an advance payment on the five shares of its capital stock evidenced by Certificate No. 3,296, now owned by Hans P. Berlau as a member of said Association, payable in installments as provided by the Articles of Incorporation and By-Laws of said Association.

We do hereby agree to pay to said Iowa Business Men's Building and Loan Association monthly installments of Three Dollars, the same being sixty cents per share on said shares, and monthly installments of Three Dollars as premium on said advance, being equal to sixty cents per

· share on said shares, and interest upon the said principal sum of Two 50/100 Dollars during the existence of this note in monthly payments of Eight 50/100 Dollars. The first payment of Eight 50/100 Dollars being due and payable on the date hereof, and Eight 50/100 Dollars thereafter on the 30th· of each and every month until 84 full monthly payments have been made, or until dues paid, together with the earnings accrued on each share ·of the stock of said Association held by the said Hans P. Berlau, and assigned to the said Association as collateral security, for the payment of this note, amount to One Hundred Dollars.

The failure to pay each and every one of said monthly installments within two months after due shall make the whole sum evidenced hereby due and collectible at once, at the option of the payee.

All payments past due shall draw interest at eight per cent. from the date they become due until paid, and we agree that in any suit on this note a reasonable attorney's fee shall be allowed and taxed with the costs.

The certificate of stock issued by the plaintiff to Berlau, and referred to in the note, promised to pay to the holder thereof $100 for each share of stock at maturity " according to the conditions " of the certificate, which were as follows, so far as material:

### 84 Payment Stock.
### Conditions.

First. The monthly payments named upon the face of this certificate shall be made for eighty-four full months. * * *

Third. When said eighty-four full monthly payments have been made to this Association no further payment shall be required.

Fourth. This certificate will be paid at the office of the Trustee of this Association upon maturity, as provided in Section 5 of Article XVI of the By-Laws of this Association, which is as follows:

### Section 5 of Article XVI.

Whenever any share of stock has matured, by payments made and profits credited to the full amount of One Hundred

Dollars ($100.00), the same is deemed to have matured. No further dividends will be credited, and the stock may be withdrawn at any time.

The defendant Widle bought the mortgaged premises in December, 1894, and assumed the payment of the note given to the plaintiff by his grantors. At the same time the stock and loan account was transferred to him by the plaintiff's secretary, and he thereafter continued the payments provided for in the note until 88 full payments had been made. This action was brought to recover a balance alleged to be due on the note, and to foreclose the mortgage. There was a decree for the defendants, from which the plaintiff appeals.— *Affirmed.*

*J. L. Carney,* for appellant.

*F. E. Northup,* for appellees.

SHERWIN, J.— The defendants pleaded an agreement with the plaintiff, entered into at the time the loan was made and the stock issued, whereby the plaintiff guarantied the maturity of the stock upon the payment of eighty-four monthly installments as provided in the note, and guarantied that the matured value of the five shares of stock at that time would be $500. The defendant Widle pleaded an estoppel, based upon the allegation that before he purchased the premises and assumed the payment of the mortgage thereon, the plaintiff advised him that upon the payment of eighty-four monthly installments, of $8.50, the stock would be fully matured and of the value of $500, and that the surrender of the stock to the plaintiff after such maturity would cancel and pay the loan in full. The plaintiff denied that it represented or guarantied that the stock would mature as alleged.

The plaintiff contends that it did not represent or agree that the stock would mature upon eighty-four payments, and that the loan would then be paid in full, and further

says that such an agreement, if made, would be *ultra vires,*
and of no force or validity because of the
mutual character of building and loan associa-
tions. The latter point, however, is not pleaded, and under
well-settled rules of pleading we need give it no further con-
sideration, and turn our attention to the question whether
the representations and agreement were in fact made.

1. ULTRA VIRES.

It will be seen that the note by its terms was payable
in installments. Three dollars dues, being sixty cents per
share on each of the five shares of stock issued to Berlau, and
the same amount as a premium upon the ad-
vance, and $2.50 interest on the amount loaned,
were the items making up the monthly install-
ments due by the terms of the note; and of this aggregate
sum the $3 payable as monthly dues on the stock was also
provided for by the terms of the certificate issued for the
stock. It is conceded by the appellant that whenever the
dues paid on the stock and its earnings brought its value to
par, it would cancel the debt. But does the note itself pro-
vide for such continued payments or for such delay in ma-
turing the stock? We think a fair construction thereof, in
connection with the stock certificate issued at the time, war-
rants the conclusion that but eighty-four payments were to be
necessary to mature the stock and to pay the debt. The note
provides that $8.50 shall be paid on the 30th of " each and
every month until eighty-four full monthly payments have
been made, or until the dues paid, together with the earn-
ings accrued on each share of stock,  *  *  *  amount to
one hundred dollars." This provision, standing alone, might
well be construed to mean that in no event were more than
the designated number of monthly payments to be made, and
that should the stock sooner mature, they were to cease upon
the happening of that event. This view is strengthened by
the conditions of the certificate, which provides that the
monthly payments shall be made for eighty-four full months,
and that when so made, no further payment shall be re-

2. MATURITY OF
STOCK:
repayment
of loan.

quired, and by the stipulation that " if upon completion of the payment period" named in the certificate, " the book value" of the stock " does not equal the par value," the holder may continue the certificate until its par value is reached, and this without any further payments. These conditions and this privilege, considered in connection with the terms of the note, clearly indicate that the obligation of the note required but 84 monthly payments, of $8.50 each. Furthermore, the plaintiff concedes in its pleadings that it agreed, in consideration of 84 monthly payments, of $3 each, upon the stock, to pay the holder of the stock $500 upon its maturity, according to the provisions of section 5 of article 16 of its by-laws, already set forth herein. This section of the by-laws says nothing about the number of payments, or the time necessary to mature the stock, and only says that it shall be deemed to have matured when the payments made and profits credited amount to $100. Hence it is not inconsistent with the representations that the stock would mature with 84 payments.

It may be conceded that the language of the note is somewhat obscure and ambiguous, but taken as a whole, and in connection with the certificate, we think it susceptible of the construction we have given it. But were this not the case, the oral evidence clearly shows that such was the construction placed upon it by the defendants, and by the plaintiff when it was offering inducements for the defendants to become members of the association, and borrowers of its funds. The plaintiff was therefore bound thereby, and cannot now maintain the contention that such was not the meaning or intent of the contract. *Field v. Eastern Bldg. & Loan Ass'n,* 117 Iowa, 185. If this conclusion is right, it follows that nothing is due the plaintiff on the note and mortgage in suit, and we need consider none of the other defenses pleaded.

3. ESTOPPEL.

The judgment is *affirmed.*