Le Mars Building and Loan Association, Appellant, v. Matilda A. Burgess et al.

**Pleadings:** AMENDMENT. Code Section 3600, permitting amendment of pleadings, does not contemplate the filing of amendment after a cause has been submitted which substantially changes the cause of action or defense.

**Building and loan associations:** INSTALLMENT STOCK: MATURITY. When the by-laws of a building and loan association provide that its stock should mature upon the payment of one hundred installments of fifty cent per share per month, after deducting expenses and adding profits, the further provision that no more than one hundred payments should be required is held not to amount to a guarantee that the stock would then mature unless the amount paid with net earnings amounted to its par value; especially as by another by-law it was provided that if not then matured interest and premium should thereafter be paid.

**Usury.** Building and loan associations are exempted from the general law of usury.

**Computation of amount due on loans.** Rights acquired by a building and loan association under Code Section 1898, as amended

by chapter 48, Acts 27, General Assembly, relating to the manner of ascertaining the amount due the association on a loan, are not affected by the repeal of said chapter 48.

**Same.** Under Code Section 1898, providing that a borrower's credit in case of foreclosure shall be the withdrawal value of his stock, and a by-law providing that the withdrawal value shall be the full amount paid in with 8 per cent interest less a withdrawal fee, the borrower is not entitled to credit for the full amount paid in with interest, but such amount less the withdrawal fee provided for in the by-law.
Weaver, J., dissenting.

*Appeal from Pottawattamie District Court.*— HON. O. D. WHEELER, Judge.

THURSDAY, JANUARY 18, 1906.

SUIT to foreclose a mortgage. Judgment for the defendants. The plaintiff appeals.— *Reversed*

*Struble & Struble* and *L. G. Scott,* for appellant.

*Flickinger Bros.,* for appellees.

SHERWIN, J.— Appellant is a building and loan association organized under the laws of this state. In May, 1895, it issued to the appellee Matilda A. Burgess a certificate for nine shares of Class D installment stock, on which she agreed to pay fifty cents per share per month. In September of the same year she borrowed of the appellant $900, giving her note therefor, and securing it by a mortgage on real property and by pledge of her shares of stock. The note stipulated for the payment of interest at the rate of eight per cent. in the manner provided by the articles of incorporation and by-laws of the association. In addition to securing the loan, the mortgage recited that the borrower was to pay fifty cents per share per month on the stock issued to her and the further sum of fifty cents per share per month as " premium on the loan." The appellee made one hundred

payments of dues, interest, and premiums, aggregating the sum of $1,248 in round numbers, and upon her refusal to pay further interest on the loan this suit was brought; the petition claiming a balance of $393.97 alleged to be due on the 1st day of November, 1903. The defendant pleaded usury and that by the terms of the by-laws her stock was matured and her debt satisfied. The case was tried on these pleadings, and was orally argued and submitted on the 24th day of March, 1904. On the 9th day of April, 1904, the defendant filed an amendment to her answer pleading an estoppel. The appellant had no notice of the filing of this pleading until the 16th day of June, 1904, when a copy thereof was sent to it by the trial judge. On the next day the appellant filed a motion to strike the amendment, which was afterwards submitted with the case, and was overruled.

Code, section 3600, provides that amendments may be permitted at any time when the amendment does not change substantially the claim or defense; and it has been held that

1. PLEADINGS: amendment.

the statute is to receive a liberal construction, and that amendments may be allowed as a general rule. It has further been held that the matter rests largely in the discretion of the trial court. Notwithstanding these general rules, we are constrained to hold that the amendment in this case should have been stricken out. An estoppel to be effective must be pleaded. It was not pleaded until two weeks after the case had been submitted, and it then tendered a new and very material defense. In her original answer the defendant relied on the provisions of the by-laws, and claimed that she had discharged her debt by the payments made in accordance therewith, while in her amendment she alleged as facts upon which she based an estoppel that the appellant through its agent had guarantied the maturity of the stock when not to exceed 100 payments were made. If this was true, the defendant knew it at the time she bought the stock, or at least when she made the loan, and no excuse is shown for not sooner pleading it. The statute

does not authorize a material change in the issue after a case is submitted, and it is a practice which should not be encouraged. It is not fair to the trial court nor to the other side. *McNider v. Sirrine,* 84 Iowa, 58; *Denzler v. Rieckhoff,* 97 Iowa, 75; *Thoman v. Railway Co.,* 92 Iowa, 196; *Greenlee v. Home Ins. Co.,* 103 Iowa, 484.

Section 5 of article 15 of the by-laws provides: "Class D installment stock shall be payable 50 cents per share per month on the 1st day of each and every month, in advance, beginning with the date of the certificate, until such time as the total amounts of the installments paid in, less the sums credited to the expense account, and the earnings accredited to the shares of stock amount to the par value of $100 per share, when interest and profits shall cease, and the holder be entitled to receive $100 per share for the same. Not to exceed 100 payments shall be required to be made upon this stock, when payment shall cease, and no further assessment can be made against this stock."

*2. BUILDING AND LOAN ASSOCIATIONS: installment stock: maturity.*

The appellee contends that under the last clause of the section the stock was matured when one hundred payments thereon had been made. If this be true, nothing more is due on the loan, because the by-laws also provide that the maturity of the shares fully repays and cancels the loan. Neither the certificate issued to the defendant nor the note and mortgage executed by her contain any provisions as to the time when the stock shall mature further than by reference to the by-laws. The controversy over this question must therefore be settled by the by-laws alone. It will be noticed that the first clause of the section of the by-laws under consideration states just when the stock shall mature — that is, when it shall become worth par or one hundred dollars per share; and that is when the total amount paid in thereon, less the sums credited to the expense account, and the earnings accredited to the shares of stock amount to the value of one hundred dollars per share. Standing alone, it is a

plain statement of what shall be necessary to mature the stock so that it shall cancel the loan. It matures when the payments of fifty cents per share, less expense, together with the earnings accredited to the shares shall amount to one hundred dollars per share, and not until, then.

Does the provision of the last clause of the section contradict or render ambiguous the first clause? We think not. Nothing is said therein about the maturity of the shares; it simply provides that no more than one hundred monthly payments of fifty cents each shall be required. It does not say that the stock shall not thereafter be accredited with its share of the earnings of the association. If the one hundred monthly payments have been made, and the stock has not reached the value of $100 per share, no further payments will be required; but the stock may be matured by the future earnings of the association. That this limitation in the number of payments is not a guaranty that such payments shall mature the stock is apparent from a consideration of the entire section. When construed as above, it gives force and effect to all of the language of the section, while to construe it otherwise would be to completely nullify the first clause thereof. A similar contract is construed in *Union Mut. Bldg. & Loan Ass'n v. Aichele,* 28 Ind. App. 69 (61 N. E. 11), and the same conclusion is reached.

Again, in section 5 of article 20 of the by-laws it is provided that if the stock shall not mature in one hundred months, stock payments shall cease, and only interest and premium be paid thereafter. If any explanation of the meaning of article 15 is necessary, it is furnished in article 20; for that clearly declares that if the stock is not matured in one hundred months interest and premium shall thereafter be paid on the loan. The appellee relies on *Field v. Building & Loan Ass'n,* 117 Iowa, 185, and on *Iowa Business Men's Bldg. & Loan Ass'n v. Berlau,* 125 Iowa 22. But in both of these cases the facts were different. In the former, the certificate expressly provided that the stock should mature and

be paid in a certain number of months; and in the latter, the certificate was designated as eighty-four payment certificate. In addition to this, the note itself provided for only eighty-four payments of interest, premium, and dues. And, further, an estoppel was also pleaded, and there was evidence showing the company's representations that the stock should mature in that time. There was an attempt to bring the instant case within the rule of the Berlau Case by evidence as to the representations of an agent, and by filing the amendment to which we have referred; but, without the aid of an estoppel, or, a plea of fraud, the evidence is incompetent, and cannot be considered.

The appellee says that the loan is usurious, because the interest provided for, and because of the arbitrary premium charged. It is enough to say that the statute has excepted building and loan contracts from the operation

3. USURY.

of the general law relating to usury. Code, section 1898; chapter 48, page 32, Acts 27th Gen. Assem.; *Iowa Savings & Loan Ass'n v. Heidt,* 107 Iowa, 297; *Edworthy v. Association,* 114 Iowa, 220.

The remaining question in the case relates to the manner of ascertaining the amount due on the loan. The appellant contends that computation is to be made under section

4. COMPUTATION OF AMOUNT DUE ON LOANS.

1898 of the Code, while the appellee says that it must be made under section 6, chapter 69, page 52, of the Acts of the 28th General Assembly, which provides as follows:

In case of foreclosure, the mortgagor shall be charged with the rate of interest agreed upon, not to exceed 8 per cent. per annum, and shall be entitled to be credited as of any anniversary of said mortgage, with the total amount of all payments made on the stock to the association during the preceding year, and such payments on the stock shall be treated as a payment upon the mortgage, anything in the articles of incorporation or the by-laws of such association to the contrary notwithstanding.

The loan was made in 1895, and section 1898 of the Code, as amended by chapter 48, page 32, of the Acts of the 27th General Assembly, will determine the basis of computation, unless the repeal of chapter 48 by chapter 69, page 51, of the Acts of the 28th General Assembly, brings the matter under the latter chapter. Iowa Sav. & Loan Ass'n v. Heidt, supra; Edworthy v. Association, supra. This question is decided against the appellees' contention in Edworthy v. Association, supra, and in Briggs v. Ass'n, 114 Iowa, 232. Both cases presented the precise question involved here, and it is held that the repeal of chapter 48, page 32, of the Acts of the 27th General Assembly did not affect the rights acquired by the association under section 1898 of the Code, as amended by said Chapter 48. The Edworthy Case fully discusses the proposition, and holds that the association was entitled to recover not to exceed 12 per cent. under section 1898, notwithstanding chapter 69.

Section 1898 provides that in case of foreclosure, the borrower shall be credited with the same value of his shares as if he had voluntarily withdrawn them, and the by-laws of the appellant provide that the withdrawal value shall be the amount paid to the association, with interest at not less than 8 per cent., less fifty cents withdrawal fee. The appellee urges that this provision of the by-laws means that the total amount paid to the association on the stock and loan, with interest thereon, shall constitute the withdrawal value of the stock. The contention is clearly unsound. The original article of the by-laws touching this matter, and the amendments thereto relate solely to the stock and to the manner of its withdrawal at different periods. Section 15 of the by-laws provides for the sale of class D installment stock, and provides that it shall be paid for in monthly payments of fifteen cents per share per month, and section 16 provides for the withdrawal of the same stock in the manner that we have already indicated. If the appellee's position is correct, the apparent borrower of a building and

5. SAME.

loan association would, in fact, become a lender; for, by withdrawing his stock, he could recover all that he had paid thereon with interest at 8 per cent., and, in addition thereto, he would have had the use of the association's money for nothing.   That such a result was not contemplated by either party to the contract is very evident.   See Briggs v. Association, *supra.*

A small sum for the expense fund was to be deducted from the amount paid on each share, and the balance of the stock payments should be the amount specified as paid to the association on the stock.   The amount paid to the appellant on the stock under this rule is $421.20, which, with interest, or its equivalent in dividends, will constitute its withdrawal value under the contract.   The total withdrawal value of the stock at the time the petition was filed was $574.28, as computed by counsel.   The defendant is to be charged with the amount of the loan, $900, and with the delinquent interest, $12, making a total charge of $912.   Deducting from this the withdrawal value of the stock, $574.28, left a balance due the appellant of $337.72 at the time the petition was filed.   The loan and interest at 12 per cent. then amounted to $1,773, and the total payments of interest, dues, premiums, fines, and all other charges amounted to $1,248. in round numbers.   It is therefore evidence that the appellant was entitled to judgment for the amount claimed. *Iowa Deposit & Loan Co. v. Matthews,* 126 Iowa 743.   The case is reversed, and remanded for judgment in accordance with this opinion.

In answer to a suggestion that the appellant is not entitled to attorney's fees and costs under section 6, chapter 69, page 52, of the Acts of the 28th General Assembly, because it prayed for a larger judgment than it is entitled to, we have to say that we see no reason for so ordering, even if the law be applicable to this case.   A motion to strike the appellees' amendment to the appellant's abstract was submitted with the case, and is sustained.— *Reversed* and *remanded.*

WEAVER, J. (dissenting).— In my judgment the decree of the trial court needs no other support than is found in section 5, art. 15, of the appellant's by-laws, quoted in the foregoing opinion by SHERWIN, J. For clearness of statement I reproduce it here:

Class D installment stock shall be payable 50 cents per share per month on the 1st day of each and every month, in advance, beginning with the date of the certificate, until such time as the total amounts of the installment paid and the earnings accredited to the shares of stock (less the sums credited to the expense account) amount to the par value of $100 per share, when interest and profits shall cease, and the holder shall be entitled to receive $100 per share for the same. Not to exceed 100 payments shall be required to be made upon this stock when payment shall cease, and no further assessment can be made against this stock.

The by-laws also provide that the maturity of the stock subscribed and pledged to secure a loan of like amount shall operate as a payment and cancellation of such loan. If said section 5 is not an undertaking to mature class D stock in one hundred payments, then I confess my utter inability to interpret it. The method of analyzing it pursued in the majority opinion is in my view erroneous. It separates the two sentences of which the section is composed, treating them as distinct and independent propositions; and, when thus viewed, it is concluded that to give the second sentence the meaning contended for by the appellee nullifies or destroys the clear meaning of the first sentence. In my view, we are required by the most' elementary rules of construction to read the entire section as a single proposition, each sentence thereof in the light of the other. The evident purpose of the section is to define, for the benefit of borrowers and stockholders, the limit of time when their stock will mature; in other words, when payments thereon by the holder shall cease and the stock shall be worth its full par value. Reading it in the manner suggested, and charitably assuming that

the language was intended to convey its apparent meaning and to conceal no pitfall for the unwary buyer, what interpretation would the person of average education, intelligence, and experience place upon this section? If the appellee, on being solicited to make this investment, had asked the appellant, " How do I know that you will ever mature this stock, or that I shall not be compelled to go on indefinitely to the end of time paying monthly installments of premiums, dues, and interest?" and appellant had answered, as unquestionably it did, by pointing out this section, what could appellee have reasonably understood from it? Would he not naturally and rightfully have accepted that section as an assurance that in no event would he be required to make more than one hundred payments; that this was the extreme limit, and if the sum of payments and accruing profits should amount to $100 per share before the time limit was reached, the period of maturity would be correspondingly shortened? This thought is clearly implied, if not expressed in the words " not to exceed 100 payments shall be required." And it is to be remembered that this contract being prepared by the appellant is to be construed most strongly against it, and is to be given the meaning which it knew, or had reason to believe, the appellee placed upon it. *Field v. Easton B. & L. A.,* 117 Iowa, 196, 197.

I do not reach this interpretation of the contract as a matter of first impression merely, for I think I cannot be mistaken in saying that this court is already committed to it by the unanimous decision rendered in *B. & L. Association v. Berlau,* 125 Iowa 22. I am aware that this precedent is referred to in the majority opinion where it is sought to be distinguished, though I submit the distinction drawn is not a material one. Comparing the contracts under consideration in the two cases we find that in the Berlau Case, it was provided by a by-law that, " whenever any share of stock has matured by payments made and profits credited to the full amount of one hundred dollars, the same is deemed to

have matured." This I contend does not differ in any material degree in meaning or legal effect from the corresponding provision in the contract now in suit, which says that the share shall be matured when "the total amount of installments paid in and earnings credited to the amount of stock amount to the par value of $100 per share." Proceeding, next, to the time limitation, we find in the Berlau Case the following: "First. The monthly payments named upon the face of this certificate shall be made for 84 full months. . . . . Third. When said 84 full monthly payments have been made to this association no further payment shall be required. Fourth. This certificate shall be paid upon maturity as provided in section 5, art. 16, of the by-laws "— which section is the same above quoted, stating when the stock shall be deemed matured. In the case at bar, the corresponding provision is: "Not to exceed 100 payments shall be required to be made upon this stock, when payments shall cease, and no further assessment can be made against this stock." Now, if there is any shade of difference between these provisions, the one in the Berlau Case goes farther to sustain the conclusion contended for by the appellant than does the one in this case; for it will be observed that the promise contained in the certificate in that case was to pay when the shares were matured "as provided in section 5, art. 16, of the by-laws," which section, standing alone, provided for maturity only when payments and earnings amounted to the full sum of one hundred dollars per share. Yet in that case we did not measure the rights of the shareholder by this definition of maturity, isolated from other provisions of the contract; but, taking them altogether and endeavoring to arrive at the real meaning of the contract as it was made, we reached the conclusion that the agreement "might well be construed to mean that in no event were more than the designated number of monthly payments to be made, and that, should the stock sooner mature, they were to cease upon the happening of that event." And this is

precisely what I claim to be the effect of the contract now before us. The circumstance that in the Berlau Case the stock was called or designated " 84-Payment Stock," while in the present case it is called "Class D Stock," is not, it seems to me, of such significance or importance as to call for any different construction of the language in the body of the contract. See, also, *Vought v. B. & L. Ass'n,* 172 N. Y. 508 (65 N. E. 496); *B. & L. Ass'n v. Williamson,* 189 U. S. 122 (23 Sup. Ct. 527, 47 L. Ed. 735).

I wish to suggest that to hold as do the majority that after one hundred monthly payments, nothing but payment of dues cease and the borrower must still go on paying premiums, and interest *ad infinitum,* is to insert into the contract a provision which the parties themselves have not made. In all essential respects the stipulations of the contracts in the two cases are substantially identical, and were construed by us in the former case in harmony with the contention of the appellee herein. I am still content with the reasoning and result of the opinion there announced, and must object to this radical departure from it.

I think, also, that we are not justified in refusing to consider the amendment to the petition filed after the submission, but before the decision, of the case in the court below. It is not only the statutory right of a party, but one long and universally conceded in practice to amend his pleading, even after the submission of his case to conform to the evidence. *Larkin v. McManus,* 81 Iowa, 723; *Davis v. Railroad Co.,* 83 Iowa, 744; *Spink v. McCall,* 52 Iowa, 432; *Tiffany v. Henderson,* 57 Iowa, 490; *Crismon v. Deck,* 84 Iowa, 344; *Hunt v. Collins,* 4 Iowa, 56; *Blandon v. Glover,* 67 Iowa, 615; *Thomas v. Brooklyn,* 58 Iowa, 438; *Ellis v. Landley,* 37 Iowa, 338. It was for that purpose, to conform the pleadings and issues to the evidence already in the record, that this amendment was offered. If there was no evidence to sustain it, the appellant was not injured. If there was no evidence to sustain it, then the right to amend

could not have been denied without error. Blandon v. Glover, *supra;* Tiffany v. Henderson, *supra.*

The decree of the district court is well sustained by the evidence, and I think it should be *affirmed.*

DEEMER, J.— I concur in this dissenting.